Lennox Hinds, Esq.
75 Maiden Lane
Suite 222
New York, NY 10038

United States District Court
Southern District of New York

_____

TERRELL JAMES

    Plaintiff

    v.

CUNY-JOHN JAY COLLEGE, DONALD V. GRAY,
Director, Office of Legal Counsel, John Jay College,
NEIL STEWART, ANTHONY BRACCO, Director of
Facilities at John Jay College, JOHN JAY COLLEGE,
ANNE GOON, Administrative Superintendent

    Defendants

Dkt. No.

COMPLAINT

_____

Plaintiff, by his attorney, Lennox S. Hinds, Esq., complaining of the acts of Defendants, states as follows:

## PRELIMINARY STATEMENT

1. This is an action brought for discrimination in employment. Plaintiff has been subject to harassment and disparate treatment on the basis of his race, national origin, hostile work environment, and retaliation, in that a West Indian supervisor has been allowed to discriminate against him, without correction by his employer, Cuny-John Jay College. Plaintiff was also retaliated against for his protected activity of whistleblowing after he informed the college's safety officer that he was being required to do work that violated OSHA.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 to redress violation of Plaintiff's civil rights.

3. This Court has pendent jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims based on local law.

## PARTIES

4. Plaintiff is an African-American citizen of the United States and resident of New York.

5. CUNY JOHN JAY COLLEGE is an employer within the meaning of New York State Labor Law § 240.

6. At all times mentioned herein, Defendant DONALD GRAY has been the Director of the Office of Legal Counsel of John Jay College. DONALD GRAY was aware of Plaintiff's mistreatment from the grievances that Plaintiff filed, and did nothing to prohibit the Defendants from continuing this mistreatment.

7. At all times mentioned herein, Defendant NEIL STEWART has been Plaintiff's immediate supervisor at John Jay College. Defendant NEIL STEWART is of West Indian national origin.

8. At all times mentioned herein after his employment by Defendant John Jay College began in 2016, ANTHONY BRACCO has been the Director of Facilities at John Jay College.

9. At all times mentioned herein, ANNE GOON has been an administrative superintendent at JOHN JAY COLLEGE.

## AS A FIRST CAUSE OF ACTION

## FACTS

10. At all times mentioned herein, commencing on February 27, 2013, Plaintiff has been an employee of Defendant John Jay College.

11. Plaintiff's supervisor, a West Indian male, Defendant NEIL STEWART, who is and has been Plaintiff's Administrative Superintendent, has micromanaged Plaintiff and subjected him to excessive scrutiny, required him to do out-of-title work and harassed him and disciplined him, and has subjected Plaintiff to a hostile work environment based on his race and national origin, and in retaliation for his opposition to discrimination, as described below.  STEWART has also given Plaintiff work assignments which required Plaintiff to work alone on a ladder ten feet off the ground, in violation of the Occupational Safety and Health Act and regulations thereunder.

12. As described below, Defendant STEWART has subjected Plaintiff to disparate terms and  conditions of employment based on his race and national origin, and in retaliation for his opposition to discrimination..

13. Plaintiff was kept in a probationary status, which should have ended after three months, for almost two years, due to STEWART's intermeddling.

14. Plaintiff has received uniformly positive written comments from other departments on his courtesy, professionalism, and diligence.

15. Plaintiff was given a work order to replace batteries, that required him to work

3

alone on Saturdays, using a thirteen foot ladder, without assistance, in violation of OSHA rules.

16. On February 25, 2016, Defendant NEIL STEWART falsely accused Plaintiff of sleeping at morning meetings where assignments were handed out.

17. No white worker supervised by Defendant NEIL STEWART has been accused falsely of any infraction.

18. On March 18, 2016, Maintenance department staff were shown a video on checking fire extinguishers.  Because the other worker who worked on the weekend was off on Fridays and didn't see the video, Plaintiff was required to check all the fire extinguishers on Saturday.

19. Defendant NEIL STEWART announced at the meeting that he wanted all the fire extinguisher inspection to be completed that weekend.

20. Because Plaintiff was the only employee who both attended the meeting and was working over the weekend, only Plaintiff could be working over the weekend the entire task of inspecting fire extinguishers fell to Plaintiff. Plaintiff also was required to single-handedly inspect the over fifty fire extinguishers in the Haaren Hall Gerald Lynch Theatre.

21. Plaintiff alone was given the assignment to check fire extinguishers throughout John Jay College, Plaintiff was alone given the assignment to check fire extinguishers throughout the John Jay campus alone on Saturday, with the work order requiring him to complete fire extinguisher inspection in Gerald Lynch

4

auditorium without assistance from anyone, although this work required working in rafters where there were many trip hazards.

22. No white worker supervised by NEIL STEWART has been given onerous assignments of a large quantity of work to be performed on a single day.

23. In or about March, 2016, Plaintiff was given a work order by NEIL STEWART which required him, without assistance, to climb a ladder and reset time on clocks throughout the John Jay College campus, a violation of OSHA safety standards.

24. No white worker supervised by NEIL STEWART was given a similarly hazardous and onerous work assignment.

25. On March 22, 2016, Plaintiff filed a grievance against Defendant NEIL STEWART, for out of title work, harassment, and discrimination.

26. On March 23, 2016, Defendant NEIL STEWART, who usually places work orders on the table in front of workers, attempted to place work orders directly in Plaintiff's hands.

27. Later in the day, Plaintiff was called into a meeting with Defendants NEIL STEWART and ANNE GOON, and told he would no longer be allowed to wear a hooded sweatshirt, and if he did, further action would be taken.  When Plaintiff's Hispanic co-worker, whom Plaintiff had brought to the meeting, said that he, too, wore a hooded sweatshirt because the campus was cold, NEIL STEWART said "this is not about you."  This addition of a dress code was in retaliation for Plaintiff refusing to accept work orders in his hand that morning.

28. On April 26, 2016, the timekeeper was asked by NEIL STEWART if Plaintiff had

brought in a doctor's note for three days' absence due to an on-the-job injury, although the maintenance workers' manual states that a doctor's note can be waived for up to and including three days' absence.

29. On April 27, 2016, Plaintiff was given a Letter of Guidance which falsely accused him of sleeping in the morning meeting, and of showing a disrespectful attitude toward supervisors. This Letter was in retaliation for Plaintiff's opposition to discrimination.

30. At the meeting to discuss this Letter of Guidance, Plaintiff asked to have his union representative present. NEIL STEWART said it would not be necessary, but was overruled by another manager.

31. When Plaintiff's union representative arrived, NEIL STEWART told him he was only there to observe.

32. During the two months prior to this Letter of Guidance, Plaintiff had completed between fifty and sixty work orders, more than any other maintenance employee, not including oral assignments and volunteer work assisting other tradesmen.

33. On April 28, 2016, Plaintiff spoke with Lorraine Belasco, the Human Resources training specialist who was investigating Plaintiff's claim against John Jay's Public Safety Department, about when she was going to start the investigation. She stated that Elmer Phelon, the Director of Facilities Management, had her working on a special project.

34. NEIL STEWART conducted Plaintiff's annual evaluation, in which he stated his personal feelings toward Plaintiff, without taking into account the views of any

6

other staff, managers, or administrative superintendents whom Plaintiff had worked for throughout the college.

35. After the April 28, 2015 evaluation, NEIL STEWART refused to conduct Plaintiff's evaluations.

36. On May 5, 2016, Mrs. Belasco confirmed that the investigation had not progressed as she would have liked but promised Plaintiff to get back to him in two weeks.

37. On May 9, 2016, Plaintiff filed an EEOC harassment claim against NEIL STEWART..

38. On May 2, 2016, Plaintiff was mailed a certified copy of the same Letter of Guidance.

39. On May 3, 2016, NEIL STEWART called Plaintiff over the public radio to STEWART'S office to bring in his weekend work orders. No one is ever called over the radio to bring in his work orders.

40. On June 2, 2016, the Step One hearing took place at John Jay College, with DONALD GRAY, Rajendra Singh, NEIL STEWART, ANNE GOON, Randy Klein, Bernard Cenacs and Plaintiff in attendance.

41. On August 3, 2016, Mrs. Belasco informed Plaintiff that the investigations were over and that her findings were sent to DONALD GRAY and Local 237, which would have to handle the rest of the investigation.

42. Plaintiff later learned that Mrs. Belasco had been terminated.

43. On June 28, 2016. Plaintiff was given a work order to perform with three other

7

workers, even though it was his day off.

44. Plaintiff was issued a preventive work order to clean a street vault/pit, which was not in his job description, and without a work order to clean this infested area consisting of syringes, needles, urine, feces, and other garbage.

45. On October 17, 2016, Union Local 237 informed Plaintiff that the Step 2 hearing was going to be held at CUNY Central Office on October 31, 2016. NEIL STEWART submitted claims to that hearing which were false, including that Plaintiff had not turned in work orders.

46. On or about January 5, 2017, Defendant STEWART gave Plaintiff a "Preventative Maintenance Work Request" work order to check and clean three North Hall street vaults even though cleaning is not in Plaintiff's job description.

47. On January 30, 2017, Plaintiff enrolled in and started classes at New York City College of Technology, a benefit provided for employees of CUNY.

48. On May 17, 2017, Plaintiff was given a weekend work order and another work order by NEIL STEWART to change light bulbs in a building to which he is not ordinarily assigned.

49. NEIL STEWART continued to issue work orders for Plaintiff on Plaintiff's days off.

50. NEIL STEWART continued to issue work orders for Plaintiff to work alone on ladders at dangerous heights.

51. NEIL STEWART continued to issue Out of Title preventative work orders to Plaintiff to do vehicle maintenance, elevator cleaning, street vault, pit cleaning.

52. On May 25, 2017, Plaintiff filed an on-line complaint with OSHA about working on

ladders alone.

53. On June 27, 2017 Ms. Lindsay Kayman conducted training on ladder safety in which Plaintiff informed Ms. Kayman of the type of work orders STEWART had issued him over the years involving violation f ladder safety.

54. On June 27, 2017, Ms. Kayman e-mailed Plaintiff telling him that what STEWART had done was wrong and that JOHN JAY COLLEGE's practices were illegal.

55. In or about the first week of July, 2017, in a telephone conference with ANNE GOON, administrative superintendent, David Stanley, and ANTHONY BRACCO, Director of Facilities, Plaintiff was told he would have to work on, July 7, 2017, and to have July 8 off.

56. On June 29, 2017, Plaintiff was given a work order to perform work on July 3, 2017, his day off.

57. On Friday, July 7, 2017, Plaintiff received a call from ANTHONY BRACCO not to come in on July 8, and that if he came in, he would be removed and subject to disciplinary action. .

58. Plaintiff came in on July 8, to avoid losing a day's pay , and after an hour, a Public Safety department member came and ushered Plaintiff off the premises.

59. Plaintiff was never subjected to disciplinary action, but two weeks later, his schedule was changed from 7 a.m. Tuesdays through Saturdays to new hours, 8:00 a.m .through 4:30 p.m. Monday through Friday.

60. The schedule change was made knowing that it would interfere with Plaintiff taking classes at CUNY, which was one of the prerogatives of working for CUNY.

and deprive him of the weekend overtime rate of pay.

61. While plaintiff had his schedule changed so that he no longer worked on a weekend day, a white worker who also was under the supervision of NEIL STEWART did not have any change made to his schedule, which included Sundays.

62. On July 12, 2017, Plaintiff was given a "preventative Maintenance work request" to check and clean three North Hall street vaults, even though cleaning is not in Plaintiff's job description.

63. On July 10, 2017, Plaintiff's schedule was changed to Monday-Friday, 8:00 a.m. - 4:30 p.m, denying Plaintiff differential pay in retaliation or his opposition to discrimination and subjecting him to an ongoing hostile work environment.

64. On July 17, 2017, Plaintiff filed a grievance concerning the denial of his Saturday scheduled work.

65. During the week of July 10, 2017, Plaintiff met with Toni Mason-Clark to see if the action taken by ANTHONY BRACCO was legal and if Plaintiffs pay was going to be affected.

66. On November 7, 2018, Plaintiff met with Terencia Marrtin, an HR Coordinator and was able to see that his time-sheet for the two-week period from June 25, 2017 through July 8, 2017 was altered with an **x** and **NO Pay**.

67. Plaintiff insisted that he should be paid and his request was granted.

68. John Farrell, a Caucasian maintenance worker did not have to immediately change his schedule.

69. Again, on December 27, 2017, Plaintiff was given a "Preventative Maintenance Work Order" to clean and organize another tradesman's shop.

70. When a white worker wrote a statement about Plaintiff being treated less favorably with respect to weekend work, Defendant STEWART told the worker to mind his own business.

71. Defendant ANNE GOON has witnessed numerous acts of verbal harassment of Plaintiff by Defendant STEWART, and has taken no steps to prevent them.

72. Defendant GOON also prevented Plaintiff from having overtime work assigned from the time of Plaintiff's April, 2016 grievance forward.

73. Plaintiff is required to call in days in advance to use vacation days. Otherwise, his absence is counted as a sick day.

74. A white worker who reports to NEIL STEWART has been allowed by STEWART to call in on the day he is taking off, and have it counted against his vacation days.

75. Plaintiff has been required to do out-of-title work, while white workers reporting to Defendant NEIL STEWART have not been assigned out-of-title work by STEWART..

76. A list of work done by number of work orders received, in 2016, lists Plaintiff working a total of 963 orders, the highest number of any maintenance department employee, while the number performed during the same period by a white worker totaled seventy-five ,

77. Defendant NEIL STEWART denied Plaintiff's request for Tuesdays off. From in or about August, 2015, and through the present, Defendant STEWART denied

Plaintiff's request for a Wednesday to Saturday schedule. Plaintiff was made to work Tuesday through Thursday, take Friday off, and return to work on Saturday.

78. No white workers were subject to this type of denial of their scheduled work day changes, and irregular work schedules.

79. On July 17, 2017, Plaintiff received a letter from NEIL STEWART stating that his schedule would officially be changed on August 14, 2017, from 7-3:30 p.m. Tues. to Saturday, to 8-4:30.p.m Monday-Friday, the second time Plaintiff's schedule was changed in four years of employment with John Jay College.

80. Plaintiff's second change of schedule forced him to become a part-time student at New York City Technical College.

81. On September 15, 2017, Steve Waxman, an administrative superintendent in facilities informed Plaintiff that he had filed a report with the public safety office of John Jay College because he had been disrespected by ANTHONY BRACCO and didn't feel safe around him. Mr. Waxman said that a public safety officer had witnessed this incident and did his own report against ANTHONY BRACCO.

82. Mr. Waxman addressed this situation with Raj Singh, who told him it would be in his interest not to pursue the matter.

83. Mr. Waxman is no longer employed at John Jay College.

84. As a result of the hostile work environment to which he has been subjected, Plaintiff commenced therapy sessions with a psychotherapist, Dr. Verna Callender.

85. On February 1, 2018, Plaintiff was given a Preventative Maintenance Work

      Request to clean the elevator tracks/saddle in Haaren Hall every Friday, when white workers were not given this assignment.

86. In another example of Defendant STEWART'S acting with a racial animus, he threatened to physically fight with a Guyanese-American worker.

87. This was reported to the Public Safety Department, but nothing was done about it, despite CUNY-John Jay College's written policy to prevent workplace violence.

88. On February 21, 2018, Patrick Young, a white electrician at John Jay College was able to have NEIL STEWART excuse him for two days using his annual time instead of sick days. Normally, a person would have to get annual days approved in advance before getting the days that he requested.

89. Throughout 2018, NEIL STEWART continued to issue out of title work orders to Plaintiff, including work orders to have Plaintiff work alone on ladders.

90. On October 9, 2018, NEIL STEWART received a cease and desist order from ANTHONY BRACCO concerning cleaning of the street vault/ pit, nearly three years after the original complaint.

91. NEIL STEWART has continued to issue work orders to Plaintiff on his days off.

92. On November 4, 2018, NEIL STEWART approved the white electricians to work overtime to change the clocks for daylight savings time ; the exact job which Plaintiff had been doing for years.

93. On November 5, 2018, STEWART assigned four maintenance workers , not including Plaintiff, to do the job that the electricians were supposed to do the job which the electricians were supposed to do on Sunday, November 4, 2018, which

13

they got paid for.

94. Plaintiff attempted to sign up for the task on Friday, November 2, 2018. But STEWART did not come to work that day, and the sign-up sheet was not posted.

95. Plaintiff is still employed by John Jay College. The harassment has not ceased.

96. There is an ongoing continuing violation of Plaintiff's rights.

97. DONALD V. GRAY was aware from Plaintiff's grievances of the mistreatment of Plaintiff by Defendants, and failed to take any steps to prevent or curtail this mistreatment.

## AS A SECOND CAUSE OF ACTION

98. Plaintiff repeats as if stated here in full ¶¶ 1-65 of this Complaint.

99. Plaintiff has been subject to a hostile work environment by Defendants and continues to be subjected to a hostile work environment, based upon his race, national origin, and in retaliation for his opposition to discrimination..

100. Plaintiff has been subject to an environment which would cause a worker of ordinary firmness to be unable to perform his work with the same level of proficiency.

## AS A THIRD CAUSE OF ACTION

101. Plaintiff repeats as if stated here in full ¶¶ 1-68 of this Complaint.

102. Defendants acting under color of law have deprived Plaintiff of his civil rights in violation of 42 U.S.C. § 1983.

## AS A FOURTH CAUSE OF ACTION

103. Plaintiff repeats as if stated here in full ¶¶ 1-70 of this Complaint.

14

104. Defendants have deprived Plaintiff of the right to contract for employment on the same terms as are available to whites, in violation of 42 U.S.C.§ 1981a, entitling Plaintiff to an additional money damages remedy for the violation of his rights.

## AS A FIFTH CAUSE OF ACTION

105. Plaintiff repeats as if stated here in full ¶¶ 1-72 of this Complaint

106. Defendants' actions have been and are in violation of the New York City Human Rights Code, New York City Administrative Code § 8-107 et seq, by aiding and abetting discrimination. .

## AS A SIXTH CAUSE OF ACTION

107. Plaintiff repeats as if stated here in full ¶¶ 1-74 of \this Complaint

108. Defendants actions have been and are in violation of the New York State Civil Rights Law, Executive Law § 296 et seq.

## AS A SEVENTH CAUSE OF ACTION

109. Plaintiff repeats as if pleaded here in full ¶¶ 1-76 of the Second Amended Complaint.

110. CUNY-John Jay College is an employer within the meaning of New York State Labor Law § 240.

111. . Plaintiff complained to the Occupational Health officer at Defendant CUNY-John Jay College that he was being compelled to work alone on a ladder thirteen feet off the ground.

112. Plaintiff included his being made to work under unsafe conditions in a grievance his union filed on his behalf with Defendant CUNY-John Jay College.

113. Defendants, in reprisal and retaliation for Plaintiff voicing his safety-related concerns, revised his working hours so that he could no longer earn overtime pay for weekend work.

114. Plaintiff is entitled to compensatory damages against Defendant CUNY-John Jay College for his lost overtime pay.

## AS AN EIGHTH CAUSE OF ACTION

115.   Plaintiff repeats as if stated here in full ¶¶ 1-80 of this Complaint

116.   Defendants' actions constitute the intentional infliction of emotional distress, made illegal and answerable in tort under the common law of New York.

Wherefore, Plaintiff demands an award of money damages, punitive damages against all parties subject to punitive damages, a declaration that Defendants violated Plaintiff's civil rights, an injunction requiring Defendants to purge Plaintiff's personnel record of all disparaging statements, and to cease discrimination against Plaintiff, reasonable attorneys' fees and the costs of this action.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable by jury.

> Yours. etc.
>
> /s/
>
> Lennox S. Hinds
> Attorney for Plaintiff