UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TERRELL JAMES,                          :
                                        :
                    Plaintiff,          :        19cv644 (DLC)
                                        :
          -v-                           :        OPINION AND ORDER
                                        :
JOHN JAY COLLEGE, DONALD V. GRAY,       :
Director, Office of Legal Counsel, John :
Jay College, NEIL STEWART, SUSAN        :
JEFFREY, and RAJENDRA SINGH, Director   :
of Human Resources,                     :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X

Appearances:

For the Plaintiff:
Lennox Stephen Hinds
Stevens, Hinds & White, P.C.
116 West 111th Street
New York, NY 10026

For the Defendants:
John Michael Schwartz
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005


DENISE COTE, District Judge:

     This is the second of two actions brought by Terrell James

("James") against his employer the City University of New York-

John Jay College ("John Jay") and individual defendants

(collectively, the "Defendants").  In this and in his prior

action, James principally asserts claims under 42 U.S.C. §§ 1983

and 1981, the New York State Human Rights Law ("NYSHRL"),[1] the New York City Human Rights Law ("NYCHRL"),[2] and New York common law.[3]  In the instant action, James has also alleged that John Jay retaliated against him for voicing safety concerns in violation of § 240 of the New York Labor Law ("NYLL").  The Defendants have moved to dismiss this action as barred by the doctrine of res judicata and for its failure to state a claim. For the reasons that follow, the Defendants' motion is granted in part.  With one exception, all claims based on events occurring prior to November 9, 2018 are dismissed as barred by res judicata.  The motion to dismiss is also granted in part as

---

[1] James pleads this claim under the "New York State Civil Rights Law," but cites to the statutory provisions containing the NYSHRL.  N.Y. Exec. Law § 296 et seq.  Because the complaint cites the statutory provisions of the NYSHRL, and because the Civil Rights Law is inapposite, the SAC is assumed to bring the Fifth Cause of Action pursuant to the NYSHRL.

[2] The SAC brings this claim under the "New York City Human Rights Code," but cites to what is commonly referred to as the New York City Human Rights Law, or NYCHRL.  New York City, N.Y., Code § 8-107 et seq.

[3] James' prior action also brought claims pursuant to 42 U.S.C. §§ 1985 and 1986 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.  The prior action also named as defendants Anthony Bracco, John Jay's Director of Facilities, and Anne Goon, the Administrative Superintendent at the college. Bracco and Goon were named in the Complaint and First Amended Complaint in the instant action but are not named in the Second Amended Complaint.

to those claims that survive the application of the doctrine of res judicata.

## Background

The following describes the history of the prior action and is drawn from the Second Amended Complaint ("SAC") in this action, including documents upon which it relies.  For the purposes of deciding this motion, plaintiff's factual allegations in the SAC are accepted as true and all reasonable inferences are drawn in plaintiff's favor.

Terrell James, who identifies as an African-American, began working in the facilities department at John Jay on February 27, 2013.  Defendant Neil Stewart ("Stewart") was James' supervisor until March 2019, when defendant Susan Jeffrey ("Jeffrey") replaced Stewart.  Defendant Rajendra Singh ("Singh") was the director of human resources at John Jay from 2015 through the present.  Defendant Donald Gray ("Gray") is described as the Director of John Jay's Office of Legal Counsel.[4]

I.  The Prior Action

On March 22, 2016, James filed a grievance against Stewart for discriminating against him in his work assignments.  On March 5, 2018, James commenced an action before this Court against John Jay and Stewart alleging claims of discrimination.

---

[4] Defendants dispute that Gray is either a lawyer or the Director of John Jay's legal department.

See James v. John Jay Coll., et al., No. 18CV1777 (DLC) ("James I"). On July 6, 2018, James amended his complaint to bring discrimination claims against, among others, all of the defendants currently named in the SAC except Jeffrey.

The plaintiff's allegations in James I focused on Stewart's alleged discriminatory and retaliatory treatment of James. It alleged principally that Stewart assigned James out-of-title and undesirable tasks that required James to work alone on tall ladders, that Stewart subjected James to excessive scrutiny, and that James received a negative Letter of Guidance in retaliation for his opposition to Stewart's discrimination.

On October 10, 2018, the defendants in James I moved to dismiss the amended complaint, and plaintiff was given a further opportunity to amend until November 9, 2018. Plaintiff did not file a second amended complaint or oppose the defendants' motion. The action was dismissed on November 20, 2018. On November 26, James' motion to reinstate the action and grant him leave nunc pro tunc to file a second amended complaint was denied.

James appealed the dismissal of James I. On September 9, 2019, the Second Circuit remanded James I with instructions to clarify the grounds for dismissal and, if necessary, decide the motion to dismiss. James v. John Jay Coll. of Criminal Justice, 776 F. App'x 723 (2d Cir. 2019). The Second Circuit mandate

issued on September 30, 2019.  On November 12, 2019, this Court
again dismissed the action.  James v. John Jay Coll., No.
18CV1777 (DLC), 2019 WL 5887364, at *1 (S.D.N.Y. Nov. 12, 2019).
The November 12 Order described how James had repeatedly failed
to diligently prosecute the case or comply with court orders.
As a result, dismissal was appropriate pursuant to Fed. R. Civ.
P. 41(b).[5]

## II.   The Instant Action

While his appeal in James I was pending, James filed the
instant action on January 23, 2019 and an amended complaint on
May 29, 2019.  On December 12, 2019, John Jay, Stewart, Singh,
Gray, and the two previously named defendants[6] moved to dismiss
the amended complaint, and James was given a final opportunity
to amend or oppose the motion.  James filed the SAC on December
31, 2019.  By that date, this Court had again dismissed James I.

The following sets of allegations appear in the SAC.  The
SAC asserts that, acting with discriminatory intent, Stewart
kept James on probationary status for almost two years; it does
not explain when that occurred.  The SAC makes a series of
allegations against both Stewart and Jeffrey.  It alleges that
after James I concluded, Stewart and Jeffrey discriminated

_____

[5] James has not appealed the November 2019 dismissal on remand.

[6] Jeffrey was not then a named defendant and did not join this
motion.

against him by assigning him undesirable and/or out-of-title work and subjecting him to excessive scrutiny.  In giving him such assignments, they also retaliated against him because he had complained internally about his treatment and because he commenced James I.  The SAC also asserts that Stewart and Jeffrey retaliated against James, requiring him to work on high ladders, because James had complained of unsafe working conditions that violated Occupational Safety and Health Administration ("OSHA") rules.

There are several allegations that do not name either Stewart or Jeffrey.  The SAC alleges that Singh and Gray were responsible for approving "pay differentials," and that James did not receive those payments from 2015 thorough 2017, while white employees did.[7]  Finally, the SAC contends that, in violation of the Equal Protection Clause, James was not informed by anyone at John Jay that a Letter of Guidance had been placed in his personnel file.

The SAC asserts that each of these actions were in violation of 42 U.S.C. §§ 1983 and 1981a, the NYSHRL, and the NYCHRL.  In a separate cause of action, the SAC asserts that

---

[7] Neither the SAC nor plaintiff's brief in opposition to this motion describes what a "pay differential" is.  In their brief in support of the motion to dismiss, the Defendants maintain that they do not know what that term denotes.

John Jay retaliated against James, in violation of NYLL § 240, because he filed a grievance complaining that he was being compelled to work alone on a thirteen-foot ladder.  In retaliation, John Jay revised his schedule on some unspecified date to deny him the opportunity to earn weekend overtime pay.[8] Finally, all of this, James alleges, constituted intentional infliction of emotional distress, entitling him to damages under New York common law.

John Jay, Gray, and Stewart moved to dismiss the SAC on January 17, 2020.  James opposed the motion on February 6. Jeffrey and Singh filed their motion to dismiss on February 13.[9] James opposed that motion on February 21.  The two motions were fully submitted by February 28.

## Discussion

The Defendants move to dismiss the claims in the SAC on the grounds that all claims against John Jay, Gray, Singh, and

---

[8] The SAC pleads this claim under NYLL § 240.  That provision requires building owners to give workers "proper protection" when those workers use, inter alia, ladders.  N.Y. Lab. Law § 240.  Both the SAC and plaintiff's opposition, however, describe the discriminatory conduct as retaliation, not the assignment itself, and plaintiff's opposition characterizes this claim as one for a violation of "the Whistleblower Act."  The Seventh Cause of Action is therefore properly construed as one brought pursuant to New York's public-employer whistleblower statute, N.Y. Civ. Serv. Law § 75-b.

[9] Jeffrey and Singh were not named in the original complaint in this action and were not served with the SAC until January 31, 2020.

Stewart are barred by res judicata; that the SAC fails to state a claim; and that sovereign immunity bars all claims against John Jay and the other Defendants in their official capacities. These issues will be addressed in turn.

I.   Res Judicata

Defendants John Jay, Stewart, Gray, and Singh argue that res judicata bars all claims against them.  The plaintiff concedes that the judgment in James I is entitled to res judicata effect but contends that only those claims arising from events that occurred before the filing of James I are barred. The Defendants' motion is granted insofar as the claims rest on events that occurred before November 9, 2018, which is the date on which the plaintiff had a final opportunity to amend his pleading in James I, so long as those events are sufficiently related to events described in the James I pleadings.

"A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to a plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014).  The doctrine of res judicata "bars the subsequent litigation of any claims that were or could have been raised in a prior action."  Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776

F.3d 126, 128 n.1 (2d Cir. 2015).[10]  Res judicata is derived from the fundamental principle that "the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event."  Soules v. Conn. Dept. of Emergency Servs. and Pub. Prot., 882 F.3d 52, 55 (2d Cir. 2018) (citation omitted).  A defendant seeking to dismiss a claim on the basis of res judicata must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 108 (2d Cir. 2015) (citation omitted).

As to the first factor, dismissal pursuant to 41(b), Fed. R. Civ. P., for failure to prosecute is an adjudication on the merits.  Fed. R. Civ. P. 41 itself provides that a dismissal under subdivision (b) constitutes an adjudication on the merits, unless the dismissal is for lack of personal jurisdiction, improper venue, or failure to join a party.  See also Plaut v. Spendthrift Farm, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal . . .

---

[10] Res judicata encompasses two doctrines: claim preclusion and issue preclusion.  Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, 898 F.3d 232, 236 (2d Cir. 2018).  Only the former is at issue here.

for failure to prosecute[] as a judgment on the merits."); La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1275 (2d Cir. 1974) ("[A] dismissal for failure to prosecute an action operates as an adjudication on the merits, unless the court specified otherwise.").

Turning to the third factor, to determine whether a new suit raises claims that were or could have been asserted in a prior suit, courts

> consider whether the second lawsuit concerns the same claim -- or nucleus of operative facts -- as the first suit, applying three considerations: (1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations.

Soules, 882 F.3d at 55 (citation omitted).  Res Judicata therefore "precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not."  Marcel Fashions Grp., 779 F.3d at 108.

Accordingly, the doctrine "may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim."  TechnoMarine SA, 758 F.3d at 501 (citation omitted).  Similarly, "[a] party cannot avoid the preclusive effect of res judicata by asserting a new theory or a different remedy."  Brown Media Corp. v. K&L Gates,

LLP, 854 F.3d 150, 157 (2d Cir. 2017) (citation omitted).  So long as conduct following the commencement of the prior action "can support a cause of action on its own[,] [however], it is the basis of a new cause of action not precluded by the earlier judgment."  TechnoMarine SA, 758 F.3d at 503.

Apart from allegations against Jeffrey, all of the allegations in the SAC concern the kinds of events raised in the James I complaint and amended complaint with the following exception.  The James I amended complaint, which was filed on July 6, 2018, did not include allegations concerning pay differentials.

The amended complaint in James I brought claims against John Jay, Stewart, Gray, Singh, and two defendants not named here.  Its principal claims arose from allegations that Stewart had harassed, micromanaged, and disciplined James and required him to work alone on a ladder ten feet off the ground in violation of OSHA regulations, and on one occasion in August of 2015 on a thirteen-foot ladder.  It explained that on March 22, 2016, James filed a grievance against Stewart for his discriminatory treatment of James, and in retaliation, on April 27, 2016, James was given a Letter of Guidance with false accusations against him and was no longer given overtime work. In July 2017, John Jay changed James' work schedule so that he no longer worked on Saturdays, but only Monday through Friday.

James contends that this was a discriminatory and retaliatory act, and he grieved that change to Singh through his union's collective bargaining agreement.  At some point in 2017, however, his schedule was changed again so that he worked Saturdays but not Fridays.

The Defendants' motion therefore is largely granted.  It is denied, however, to the extent it seeks to bar, through application of the doctrine of res judicata, any discriminatory treatment of James by Stewart that followed November 9, 2018, the date on which James had a final opportunity to amend his James I complaint.  Similarly, it is denied as to any retaliatory action taken by Stewart following November 9, 2018 due to James' filing of James I or the instant action.  Finally, James' allegation that Singh and Gray denied him "differential payments" is not barred since the James I amended complaint did not contain such allegations.

Defendants argue that the doctrine of res judicata bars all claims against every defendant aside from Jeffrey.  That is incorrect.  Any act taken by Stewart to discriminate or retaliate against James following November 9, 2018 was not included in the prior suit.  Nor could it have been, since James I was thereafter dismissed with prejudice.  To the extent, therefore, that the treatment following that date constituted an act of discrimination or retaliation, or created a hostile work

environment, it is a separate transaction from those pursued in the prior suit.

The Defendants contend that the pay differential claim in the SAC is barred by James I, not because the plaintiff's pleadings in that earlier action identified the failure to provide differential pay as an act of discrimination, but because James I brought other claims of discrimination.  As a result, they assert, James had a duty to identify every type of discrimination that he was experiencing.  The application of res judicata hinges, however, on whether the claims arise from the same nucleus of operative facts.  James I principally addressed discriminatory treatment in work assignments and retaliation for James' complaints about that treatment.  It did not allege that he was given a different rate of pay because of his race.  The claim regarding the pay differential, therefore, survives.

For his part, James appears to contend that the relevant cutoff date for res judicata purposes is the date on which he filed James I -- March 5, 2018.  This ignores James' numerous opportunities to supplement his complaint in James I with additional factual predicates and legal theories.  Because those opportunities did not lapse until November 9, 2018, that latter date is the appropriate demarcation for res judicata purposes.

James also argues that his claims concerning the letter of caution (or guidance) that was issued to him in 2016 survive

because he did not discover until 2019 that it had been placed in his permanent personnel file.  James acknowledges that he brought claims premised on the issuance of this letter in <u>James I</u>.  If he had pursued <u>James I</u> beyond the pleading stage he would have discovered the fact on which he now relies to preserve this claim.  In any event, that letter is incorporated by reference in the SAC and it informed him in its body that it "will be placed in your personal file with the college."  All claims concerning the 2016 letter are barred.[11]

Following application of res judicata principles, therefore, the only claims that survive this branch of the Defendants' motion to dismiss are the following: (1) claims against John Jay, Stewart and Jeffrey for race discrimination occurring after November 9, 2018;[12] (2) claims against John Jay, Stewart and Jeffrey for retaliation following November 9, 2018 for the filing of <u>James I</u> and this lawsuit; and (3) claims

---

[11] James also seeks an injunction that his personnel file be purged of disparaging statements.  This request for relief relates to the 2016 letter and is also barred by res judicata.

[12] To the extent evidence of conduct occurring before November 9, 2018 is relevant to the claims properly pursued at trial, that evidence may be admissible.

against John Jay, Singh and Gray for pay differential discrimination during the period 2015 to 2017.[13]

## II.   Rule 12(b)(6) Failure to State a Claim

The Defendants move to dismiss each of the remaining claims on the ground that the SAC fails to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Geffner v. Coca-Cola Co., 928 F.3d 198, 199 (2d Cir. 2019) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019).  When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." Coal. for Competitive Elec., Dynergy Inc.

---

[13] Based on this ruling, the SAC's Sixth Cause of Action against John Jay for violation of New York Civil Service Law § 75-b is dismissed in its entirety.  That claim rests on James' loss of overtime pay due to a retaliatory change in his schedule.  Those changes in schedule occurred in 2017 and were pleaded in James I.

v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted).

The SAC's surviving allegations are the following.  It asserts that Jeffrey assigned James on May 3, 2019 to clean elevator tracks, that Jeffrey required James on December 5, 2019 to work alone on a ladder above twenty feet, and that both Stewart and Jeffry assigned James out-of-title work following November 28, 2018.[14]  It further asserts that they did not give such assignments to white employees.  From these allegations, James asserts claims of discrimination, retaliation, and the creation of a hostile work environment against John Jay, Stewart and Jeffrey.  The motions to dismiss these claims are denied.

Finally, the SAC asserts that in response to his complaint to the Human Resources department that he had not received his differential payments for 2015 to 2017, James was informed that "his pay differential required the approval of" Singh and Gray. James asserts that white employees have received pay differentials.  It appears that the SAC brings a claim of race

---

[14] The SAC recites the date November 28, 2019.  It is assumed for purposes of this motion that James intended to assert continuing discrimination since November 28, 2018.

discrimination for this deprivation against John Jay, Singh and Gray.

There are three claims to which this branch of the Defendants' motions to dismiss succeeds.  They are addressed in turn.

a. Section 1983

John Jay, Singh and Gray have moved to dismiss the claims against them related to the pay differential.  Those claims are brought under § 1983, and appear to be brought as well under 42 U.S.C. § 1981a, the NYSHRL, and the NYCHRL.

"To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (citation omitted).  Additionally, in the employment context, the defendant must have acted with "discriminatory intent" and that intent must have been a "'but-for' cause of the adverse employment action or the hostile environment."  Naumovski v. Norris, 934 F.3d 200, 214 (2d Cir. 2019).  Dismissal is appropriate where a causal connection is not alleged or reasonably inferred from the complaint.  See, e.g., Farooqi, v. New York Dep't Ed., et al., No. 19CV3436 (DLC), 2020 WL 1809290, at *2 (S.D.N.Y. Apr. 9, 2020).  Finally,

when a § 1983 suit is brought against an individual government
actor, "a plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has
violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662,
676 (2009).[15]

The lone § 1983 claim against Singh and Gray, a disparate
treatment claim, is dismissed.  The SAC asserts that James "was
told that his pay differential required the approval of" Singh
and Gray.  Drawing all inferences in favor of James, the
totality of the wrongdoing alleged against Singh and Gray is
that someone in the Human Resources department once told James
that these two individuals held jobs at John Jay that included
the duty of approving any "pay differential" adjustments to an
employee's wages.  While the SAC also alleges that James has not
received such payments but that some others, "mostly white"
employees, have received such payments, this is insufficient to

---

[15] The Second Circuit has suggested that supervisors could be
subject to liability pursuant to § 1983 even where the
supervisor was not directly involved in the conduct.  See Colon
v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  The Second
Circuit has recognized that Iqbal's personal involvement
requirement is in tension with Colon's more capacious view of
personal involvement for the purposes supervisory liability.
Raspardo v. Carlone, 770 F.3d 97, 117 (2d Cir. 2014) ("We have
not yet determined the contours of the supervisory liability
test, including the gross negligence prong, after Iqbal.").
Here, however, the SAC does not allege that Gray or Singh were
James' supervisor.  They are therefore no different than any
other state actor -- James must plead their direct involvement
in order to state a claim for relief under § 1983.

plead a claim of intentional discrimination against either individual defendant.

Neither Singh nor Gray is alleged to have been the person at John Jay responsible for the decision about who would qualify for differential pay, for creating any racial disparities in the decisions about differential pay, or even for rejecting a request by James for such pay. Nor does the SAC allege that either Singh or Gray were aware of either the dispute about James' "pay differential" or a pattern of racial disparity. The SAC does not allege that Singh and Gray's actions were the "but for" cause of James' injury; it does not assert that they acted at all or that they refused to act when they should have. As a result, the SAC does not state a claim against Singh or Gray for disparate treatment. For these same reasons, to the extent that the SAC may be read as pleading claims against these two defendants for violating either state or city laws forbidding disparate treatment, those claims are also dismissed.[16]

      b. Section 1981a

John Jay moves to dismiss the claim against it brought pursuant to § 1981(a). That motion is granted.

---

[16] Both the NYSHRL and the NYCHRL provide for individual liability only for those personally involved in discrimination. Tolbert v. Smith, 790 F.3d 427, 434 n.3 (2d Cir. 2015) (NYSHRL); Feingold v. New York, 366 F.3d 138, 158-59 (2d Cir. 2004) (NYCHRL).

James asserts that he is entitled to money damages from John Jay pursuant to 42 U.S.C. § 1981a.  Section 1981a provides for damages "[i]n an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 against a respondent who engaged in unlawful intentional discrimination."  42 U.S.C. § 1981a.  Section 1981a creates remedies for plaintiffs bringing suit under Title VII of the Civil Rights Act of 1964; it is not an independent cause of action.  See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 283 (1998) ("Title VII contains an express cause of action, § 2000e-5(f), and specifically provides for relief in the form of monetary damages, § 1981a.").  Because the SAC does not plead a Title VII violation, § 1981a is inapposite and the Third Cause of Action is dismissed.

c. Intentional Infliction of Emotional Distress

The Defendants move to dismiss James' final cause of action, which is for intentional infliction of emotional distress.  That motion is granted.

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege:  "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  Conboy v.

20

AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001); Restatement
(Second) of Torts § 46.  "The conduct must be so outrageous in
character, and so extreme in degree, as to go beyond all
possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized society."  Id.  The
allegations in the SAC do not constitute that level of conduct,
and this tort claim is dismissed.

III.  Sovereign Immunity

As a result of the rulings outlined above, claims against
John Jay, Stewart and Jeffrey for discrimination and retaliation
remain.  John Jay seeks a dismissal of all claims against it as
barred by its sovereign immunity.  That motion is granted.

"[A]s a general rule, state governments may not be sued in
federal court unless they have waived their Eleventh Amendment
immunity, or unless Congress has abrogated the states' Eleventh
Amendment immunity when acting pursuant to its authority under
Section 5 of the Fourteenth Amendment."  Gollomp v. Spitzer, 568
F.3d 355, 366 (2d Cir. 2009) (citation omitted).  Sovereign
immunity "extends beyond the states themselves to state agents
and state instrumentalities that are, effectively, arms of a
state."  Mary Jo C. v. New York State & Local Ret. Sys., 707
F.3d 144, 152 (2d Cir. 2013).  CUNY and its senior colleges are
conclusively "arm[s] of state."  Clissuras v. City Univ. of New
York, 359 F.3d 79, 83 (2d Cir.) (per curiam), supplemented sub

nom. Clissuras v. City of Univ. of New York, 90 F. App'x 566 (2d
Cir. 2004)(finding that New York State "is responsible for
paying money judgments entered against CUNY senior colleges" and
that "ultimate control over how CUNY is governed and operated
rests with the state").

Accordingly, neither states nor their agents may be sued
for damages in federal court on § 1983 claims.  Will v. Michigan
Dep't of State Police, 491 U.S. 58, 71 (1989); Quern v. Jordan,
440 U.S. 332, 345 (1979).  The same is true for parallel state
and city law claims: the NYSHRL does not waive New York State's
sovereign immunity, or that of its instrumentalities or
employees acting in their official capacities, and New York City
would be without authority to do so.  Feingold, 366 F.3d at 149;
Widomski v. State Univ. of New York (SUNY) at Orange, 933
F.Supp.2d 534, 554 n.16 (S.D.N.Y. 2013), aff'd, 748 F.3d 471 (2d
Cir. 2014).

A plaintiff may, by contrast, bring a § 1983 claim against
state officials in their individual capacities for damages or
injunctive relief.  See Hafer v. Melo, 502 U.S. 21, 23, (1991).
Similarly, the Eleventh Amendment does not bar claims against
defendants in their individual capacities for violations of
state or municipal law.  Bad Frog Brewery, Inc. v. New York

State Liquor Auth., 134 F.3d 87, 102 (2d Cir. 1998) (citation omitted).  See also Feingold, 366 F.3d at 157-59.

The SAC does not appear to plead any claim against Stewart and Jeffrey in their official capacities.  Their titles are not cited in the caption.  The SAC is therefore construed as bringing claims against Stewart and Jeffrey solely in their individual capacities.  James' claims against these two individuals for violating § 1983, the NYSHRL, and the NYCHRL may therefore proceed against those defendants individually.  In the event the plaintiff intended to sue them in their official capacity, those claims would be dismissed.

As set forth above, James may not bring suit against John Jay for damages.  All claims against John Jay are therefore dismissed.

In opposition to the motion to dismiss based on application of the doctrine of sovereign immunity, James does not argue that any of the analysis set forth above is wrong.  Instead, James bases his opposition solely on the argument that in enacting Title VII, Congress abrogated state sovereign immunity.  The instant suit may proceed against John Jay, James maintains, because James I pleaded a Title VII violation and John Jay retaliated against James for bringing James I.  The inclusion of a Title VII claim in James I, however, does not act to abrogate

John Jay's immunity as to the § 1983 claim pleaded in this action.   Moreover, the SAC does not plead a Title VII claim.

### Conclusion

Defendants' January 17 and February 13 motions to dismiss are granted in part.   James may proceed with his § 1983, NYSHRL and NYCHRL claims against Stewart and Jeffrey individually based on alleged discriminatory and retaliatory conduct that occurred after November 9, 2018.   Defendants' motions are granted as to all other counts and claims.   All claims against John Jay, Singh and Gray are dismissed.

Dated:    New York, New York
          April 20, 2020

```
                          _____
                               DENISE COTE
                     United States District Judge
```