UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

TERRELL JAMES,

                       Plaintiff,                19-cv-644 (DLC)

      -against-                      **DEFENDANTS' STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

NEIL STEWART and SUSAN JEFFREY,

                       Defendants.

------------------------------------------------------------------------x

       Pursuant to Rule 56.1 of the Local Civil Rules of this Court, Defendants Neil Stewart and Susan Jeffrey submit the following statement of material facts relevant to Defendants' motion for summary judgment as to which there is no genuine issue of fact to be tried:

**A.**      **The Parties and their Jobs in the College's Facilities Management Department**

       1.     Plaintiff, Terrell James, has been employed as a maintenance worker in the Facilities Management Department (the "Department") at John Jay College (the "College") since February 27, 2013.  Second Amended Complaint (ECF No. 39, "SAC") ¶ 10; Transcript of deposition of Plaintiff, held on April 6, 2021 ("James Dep."), a copy of which is annexed as Exhibit A to the Declaration of Mark E. Klein ("Klein Decl."), at 5:16-17.

       2.     Plaintiff identifies as African-American.  SAC ¶ 4.

       3.     A maintenance worker's job at the College is to repair and fix things, including lights, furniture and any type of structures around the College's buildings, as well as moving equipment and making records of completed work.  James Dep. (Exh. A to Klein Decl.), at 5:18-6:2.

4. When Plaintiff applied for employment at the College, defendant Neil Stewart ("Stewart") interviewed him and recommended that he be hired. Declaration of Neil M. Stewart, dated September 8, 2021 ("Stewart Decl."), ¶ 2.

5. From October 2011 until January 7, 2019, Stewart held the position of Administrative Superintendent in the Department, where he was responsible for overseeing routine maintenance and repair work at the College's buildings. Stewart Decl. ¶ 1. Stewart's job included identifying what needed to be done to maintain the College's physical facilities, either from requests received from faculty and other employees, or from his inspection tours of the campus, and to issue work orders to maintenance workers to do repair or preventive maintenance jobs. Stewart Decl. ¶ 3.

6. Defendant Susan Jeffrey ("Jeffrey") has worked as an Administrative Superintendent in the Department since 2007. In January 2019, she succeeded to the responsibilities that Stewart previously performed with respect to the oversight of the work of the maintenance workers at the College. Declaration of Susan A. Jeffrey, dated September 7, 2021 ("Jeffrey Decl.") ¶¶ 1, 2.

7. In their positions as Administrative Superintendent, neither Stewart nor Jeffrey had or have independent authority to make personnel decisions affecting the College's maintenance workers, such as their rates of pay, work schedules or the termination of their employment. Rather, those decisions are made by the Director of the Facilities Management Department or higher executives at the College. Stewart Decl. ¶ 3 n.3; Jeffrey Decl. ¶ 3 n.1.

8. From the time Plaintiff joined the maintenance staff at the College until the time Stewart ceased his employment at the College, Plaintiff reported to David Stanley ("Stanley"), whose title was "Supervisor," and who in turn reported to Stewart. Stewart Decl. ¶ 3; James Dep. (Exh. A to Klein Decl.), at 6:13-7:13.

9. Since January 2019, when Jeffrey began overseeing the work of the maintenance workers, Stanley continues to be the "Supervisor," reporting to Jeffrey and supervising the maintenance workers, including Plaintiff. Jeffrey Decl. ¶ 2; Declaration of Anthony Bracco, dated September 7, 2021 ("Bracco Decl.") ¶ 2; James Dep. (Exh. A to Klein Decl.), at 6:13-20.

10. When a maintenance worker is assigned a job, he assesses the job to determine what tools or equipment is needed, and then advises either the Supervisor, Stanley, or the Administrative Superintendent to obtain the tools and equipment he needs for the job. James Dep. (Exh. A to Klein Decl.), at 7:19-8:16.

11. From at least November 9, 2018 until the College changed its procedures because of the COVID-19 pandemic, each maintenance worker was assigned to a "territory" within the campus for which he was primarily responsible. Stewart Decl. ¶ 9; Jeffrey Decl. ¶ 4; James Dep. (Exh. A to Klein Decl.), at 33:12-34:23. During the time period of the events alleged in the SAC, Plaintiff's "territory" or "zone" was floors 1 through 5 of the campus building commonly referred to as the "New Building." *Id*.

12. In assigning a maintenance worker to perform a particular job, the primary factor that Stewart used, and that Jeffrey continued to use until the College changed its procedures because of the pandemic, was the "territory" in which the need is located. Stewart ¶¶ 9, 15; Jeffrey Decl. ¶ 4.

13. A maintenance worker's race or national origin has never been a factor in Stewart's or Jeffrey's determination as to whom to assign a particular work order or maintenance task. Stewart ¶¶ 9, 15; Jeffrey Decl. ¶ 8.

14. Like Plaintiff, Stewart, Jeffrey and Stanley each identifies as African-American. Stewart Decl. ¶ 2; Jeffrey Decl. ¶¶ 7, 8.

15. From at least November 9, 2018 through January 2021, three of the eight maintenance workers at the College identified as African-American, three identified as Latino, and two identified as white. Stewart ¶ 15; Jeffrey Decl. ¶ 8. After one of the white maintenance workers and one of the Latino maintenance workers retired (John Farrell and Luis Camacho, respectively) during the first half of 2021, there are now six maintenance workers and their Supervisor, Stanley, four of whom, like Jeffrey, identify as African-American. Jeffrey Decl. ¶ 8.

B.   **Plaintiff's Allegations Regarding "Out-of-Title Work"**

16. In April 2016, Local 237 of the Teamsters Union, which represents the maintenance workers at the College, filed a grievance (the "2016 Grievance") on behalf of six of the College's eight maintenance workers at the time, including Plaintiff, contending, among other things, (i) that clearing debris from elevator door tracks constituted "out-of-title" work, and (ii) that Stewart was harassing Plaintiff. Stewart testified at a "Step 1" hearing on the 2016 Grievance on June 2, 2016. Stewart Decl. ¶ 7; Declaration of Donald J. Gray, dated September 9, 2021 ("Gray Decl.") ¶ 4.

17. Local 237 pursued the out-of-title part of the 2016 Grievance to the second step of the grievance process, at which point it entered into a written settlement agreement with CUNY (the "2017 Settlement Agreement") resolving the out-of-title portion of the Grievance. Gray Decl. ¶ 4 and Exhibit A. The 2017 Settlement Agreement explicitly provides that the parties acknowledge that removing obstructive debris from elevator door tracks on a monthly basis or more frequently, as required, falls within the job description of the Maintenance Worker title. *Id*.

18. The portion of the 2016 Grievance relating to Plaintiff's "harassment" claim against Stewart went to a Step 1 hearing on June 2, 2016. On June 30, 2016, the hearing officer found that there was no evidence to support Plaintiff's "harassment" claim. Gray Decl. ¶ 5 and Exhibit B.

19. The hearing officer's decision on Plaintiff's harassment claim against Stewart stated, among other things, that Stewart had "presented maintenance records to show that Terrell James work assignment [sic] is comparable to other maintenance workers." Exhibit B to Gray Decl., at page 2.

20. After the hearing officer's decision issued on June 30, 2016, Local 237 did not pursue the harassment claim against Stewart any further. Gray Decl. ¶ 5; Stewart Decl. ¶ 7.

21. In issuing work orders to clean elevator door tracks, both Stewart and Jeffrey relied on the 2017 Settlement Agreement and the instructions they received from the Facilities Department. Stewart Decl. ¶ 8; Jeffrey Decl. ¶ 12 and Exhibit E.

22. On May 3, 2019, Jeffrey issued a work order directing Plaintiff to clean debris from elevator door tracks in his territory. Jeffrey Decl. ¶ 10 and Exhibit A. On that same day or within the preceding three weeks, Jeffrey also issued work orders to two white and one Latino maintenance workers to do similar work. Jeffrey Decl. ¶ 11 and Exhibits B, C, D.

23. Notwithstanding the 2017 Settlement Agreement, on May 13, 2019, Local 237, on behalf of a group of maintenance workers -- again including Plaintiff -- filed a new grievance (the "May 2019 Grievance") contending, again, that clearing debris from elevator door tracks was outside their job description. Gray Decl. ¶ 6 and Exhibit C. The May 2019 Grievance also contended that checking and replacing lights within elevators was outside a maintenance worker's job description. *Id*.

24. Upon the filing of the May 2019 Grievance, Anthony Bracco, the Director of the College's Facilities Management Department, instructed Jeffrey that maintenance workers should not be directed to clean elevator door tracks or check or replace light bulbs within elevators until the May 2019 Grievance was resolved. Bracco Decl. ¶ 7; Jeffrey Decl. ¶ 13.

25. In accordance with Bracco's direction, since the May 2019 Grievance was filed Jeffrey has not assigned any work involving the cleaning of elevator door tracks or checking or replacing light bulbs within elevators. Jeffrey Decl. ¶ 13.

C.  **Plaintiff's Allegations that He Was "Required" to Work on Tall Ladders**

26. The Facilities Department has ladders and motorized lifts available for work done at heights. For work in stairwells, where motorized lifts are usually not usable, the assigned maintenance worker can request the erection of a scaffold that would provide a steady place to stand, and either the Administrative Superintendent or the Supervisor may issue work orders to laborers and carpenters to build such a scaffold (and take it down when the job was complete). Stewart Decl. ¶ 11; Jeffrey Decl. ¶¶ 15-16; Bracco Decl. ¶ 5.

27. Stewart, Jeffrey and Bracco are not aware of any instance where a request for the erection of scaffolding has ever been denied. Stewart Decl. ¶ 11; Jeffrey Decl. ¶ 15; Bracco Decl. ¶ 5.

28. Plaintiff's complaint regarding the assignment of work on "tall ladders" is seemingly based on a single work order issued to him, allegedly on December 5, 2019, to replace a light bulb in his territory. SAC ¶ 20. The work order to which Plaintiff appears to be referring is a work order Jeffrey issued on December 4, 2019. Jeffrey Decl. ¶ 14 and Exhibit F.

29. Jeffrey assigned similar work to white maintenance workers around the same time she issued the December 4, 2019 work order to Plaintiff. Jeffrey Decl. ¶ 14 and Exhibit G (copies of three similar work orders Jeffrey issued to John Farrell, one of the two white maintenance workers, to change light bulbs in stairwells in other locations: Work Order 5273094, dated December 26, 2019; Work Order 5273121, dated December 27, 2019; and Work Order 5274326, dated February 10, 2020).

30. The December 4, 2019 work order Jeffrey issued to Plaintiff and the work orders annexed as Exhibit G to Jeffrey's Declaration simply assigned the changing of light bulbs; they did not dictate how the maintenance worker should perform the work. Jeffrey Decl. ¶ 14 and Exhibits F and G.

**D.**      **Items Not Needing Repair**

31. Work orders directing a maintenance worker to repair something that, in fact, does not need repair inevitably occur, no matter which maintenance worker is assigned, because when Jeffrey receives a complaint or a report of a maintenance problem from a College faculty member or other employee, she is required to designate a maintenance worker to check out the reported location, determine what needs to be done, if anything, and, if necessary, fix the problem. Jeffrey Decl. ¶¶ 18-19. Jeffrey relies on the assigned maintenance worker to determine whether a repair needs to be performed. *Id*. ¶ 19. If the College employee who made the complaint is mistaken -- for example, if the employee is unfamiliar with the operation or location of a switch that would turn on a light -- then the maintenance worker may find that nothing needs to be done beyond "checking" on the complaint and reporting that the job has been completed. *Id*.

32. Because Jeffrey does not know in advance when a reported problem will not actually need fixing, she could not possibly consider any racial, ethnic or nationality group in assigning the reported problem. Jeffrey Decl. ¶ 20.

33. Jeffrey is not aware of any other College maintenance worker besides Plaintiff who has complained when a reported problem does not need fixing, because in such an instance the maintenance worker is simply relieved of the burden of completing a repair. Jeffrey Decl. ¶ 20.

Dated:  New York, New York
            September 10, 2021

                                                  **LETITIA JAMES**
                                                  Attorney General
                                                  State of New York
                                                  Attorney for Defendants

By: <u>*/s/ Mark E. Klein*</u>
        Mark E. Klein
        28 Liberty Street
        New York, New York 10005
        (212) 416-8663
        Mark.Klein@ag.ny.gov