UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                       :
TERRELL JAMES,                         :
                                       :
                          Plaintiff,   :        19cv644 (DLC)
                                       :
              -v-                      :        OPINION AND ORDER
                                       :
NEIL STEWART and SUSAN JEFFREY,        :
                                       :
                          Defendants.  :
                                       :
------------------------------------- X

APPEARANCES:

For plaintiff Terrell James:
Lennox S. Hinds
75 Maiden Lane, Suite 222
New York, NY 10038

For defendants Neil Stewart and Susan Jeffrey:
Mark E. Klein
Office of the Attorney General of the State of New York
28 Liberty Street
New York, NY 10005

DENISE COTE, District Judge:

        Terrell James, a maintenance worker, has brought employment

discrimination claims against two of his supervisors at City

University of New York – John Jay College ("John Jay").  Those

two supervisors, Neil Stewart and Susan Jeffrey, have moved for

summary judgment.  For the reasons set forth below, the motion

is granted.

**Background**

This is the second of two lawsuits filed by James alleging
employment discrimination.  James filed the first action on
March 5, 2018 against John Jay and Stewart.  It was dismissed on
November 20, 2018, for his failure to prosecute.  Dkt. No. 59,
James v. John Jay College-CUNY, et al., No. 18cv1777(DLC)
("James I").  This sequence of events is described in an Opinion
of April 20, 2020 (the "April 20 Opinion"), which is
incorporated by reference.  James v. John Jay College, No.
19cv644(DLC), 2020 WL 1911211 (S.D.N.Y. Apr. 20, 2020).

James filed this second action on January 23, 2019.  The
application of res judicata principles barred his claims to the
extent they arose before November 9, 2018, which is the date on
which James had a final opportunity to amend his pleading in
James I.  Id. at *3.

The April 20 Opinion dismissed many of James' claims.  The
claims in this action that survived a motion to dismiss were
claims of discrimination, retaliation, and a hostile work
environment -- arising under 42 U.S.C. § 1983, the New York
State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"),
and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-
101 et seq. ("NYCHRL") -- stemming from allegations that Jeffrey
assigned James on May 3, 2019 the task of cleaning elevator door

2

tracks and required him on December 5, 2019 to work alone on a
ladder above twenty feet.  Id. at *6.  The parties also agreed
that James adequately pleaded claims of discrimination,
retaliation, and a hostile work environment under § 1983, the
NYSHRL, and the NYCHRL based on allegations that between August
and November 2019, Jeffrey issued work orders to James for
repairs to items not needing repair.[1]

Each of these claims is premised on an assertion that the
defendants discriminated against James on account of his race.
James and both defendants identify themselves as African
American.

James has worked since February 2013 as a maintenance
worker in the Facilities Management Department at John Jay.
Stewart was Administrative Superintendent of the Department
until January 7, 2019, when he was replaced by Jeffrey.[2]  It was
the job of the Administrative Superintendent to issue work
orders to maintenance workers to do repair and preventive
maintenance jobs.  David Stanley, who held the title of

---

[1] Because Jeffrey's motion to dismiss did not seek to dismiss
claims stemming from the alleged improper issuance of work
orders for items not needing repair, the April 20 Opinion did
not address this issue, and it was assumed that the parties
agreed that these allegations adequately stated a claim.

[2] Even if the claims against Jeffrey survived summary judgment,
the claims against Stewart would not.  The events of which James
complains occurred after Jeffrey replaced Stewart.

Supervisor, was James's direct supervisor.  During the period at issue, there were eight maintenance workers at John Jay.  Three identify as African American, three as Latino and two as white.

Also during the period at issue, each maintenance worker was assigned a territory for which the worker was primarily responsible.  Since at least 2016, James' assigned territory was floors 1 through 5 of a campus building referred to as the New Building.  As this moniker suggests, that building is newer than many of the other buildings on John Jay's campus, and maintenance workers assigned to the New Building were typically asked to do a somewhat different mix of tasks than maintenance workers assigned to the other buildings, commensurate with the differing needs of old and new buildings.

The claim that James was required to clean elevator tracks on May 3, 2019 arose out of a grievance that the union filed in 2016 on behalf of six of John Jay's eight maintenance workers. James was among the six workers complaining about that assignment as out-of-title work.  Among those six workers were workers identifying as white, African American, and Latino.  In 2017, a settlement agreement acknowledged that the removal of obstructive debris from elevator door tracks was within the employees' job description.  On May 13, 2019, however, the union again filed a grievance claiming on behalf of maintenance

workers, including James, that clearing debris from elevator door tracks was outside their job description.  In the weeks leading up to May 13, 2019, white, African American, and Latino workers were assigned to clean elevator door tracks, and since the pendency of that grievance, no maintenance worker has been assigned such work.

With respect to the claim that James was required to work alone on tall ladders, the Facilities Department has ladders and motorized lifts available to its maintenance workers.  Where those are not appropriate, a maintenance worker may request that a scaffold be erected to provide a steady place to stand.  There is no evidence of any request for the erection of scaffolding by James or any other maintenance worker that was ever denied. Stewart, Jeffrey and John Jay Director of Facilities Management Anthony Bracco are not aware of any instance where a request was denied.[3]  In any event, the December 5, 2019 work order which was the focus of the complaint initiating this lawsuit assigned James the task of changing light bulbs.  It did not dictate how that work should be performed.  Indeed, James has pointed to no

---

[3] James has offered testimony from Stanley to the effect that Stewart and Jeffrey should have known that scaffolding was necessary for some work even if no request for scaffolding was made.  Even if this testimony were admissible, and it is not clear that it is, it does not raise a question of fact regarding the defendants' evidence that no request for scaffolding was ever denied.

work order that dictates how to perform a task; the orders
simply assign the task and leave the accomplishment of the task
to the discretion of a maintenance worker.

## Discussion

The defendants have moved for summary judgment on all
claims.  James has opposed the motion for summary judgment and
moved for leave to amend his complaint.  For the following
reasons, the motion for summary judgment is granted and the
motion for leave to amend is denied.

I.   Motion for Summary Judgment[4]

Summary judgment may only be granted when "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.

---

[4] This Opinion grants summary judgment to the defendants on the
merits of James' claims.  The defendants have also argued that
they are entitled to summary judgment because, even if James'
claims succeed on the merits, they are entitled to qualified
immunity.  See Horn v. Stephenson, 11 F.4th 163, 168-69 (2d Cir.
2021) ("Qualified immunity shields [a public] official from
civil liability [under § 1983] unless: [1] the official violated
a statutory or constitutional right that [2] was clearly
established at the time of the challenged conduct.") (citation
omitted).  Because the Court concludes that the defendants are
entitled to summary judgment on the grounds that they did not
violate James' constitutional rights by discriminating against
him, it need not consider whether the defendants are entitled to
qualified immunity.  Pearson v. Callahan, 555 U.S. 223, 236
(2009) (holding that district courts may "exercise their sound
discretion in deciding which of the two prongs of the qualified
immunity analysis should be addressed first in light of the
circumstances in the particular case at hand.").

Civ. P. 56(a).  "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

A.   Failure to Comply with Local Rules

In the Southern District of New York, the Local Civil Rules provide that "a party opposing a motion for summary judgment shall file a short and concise statement of the material facts in dispute accompanied by citation to evidence which would be admissible." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000) (citing Local Civil Rule 56.1) (emphasis in original).  If a non-moving party fails to "specifically controvert[]" a paragraph in the moving party's Local Rule 56.1 statement by providing a counterstatement

consisting of "correspondingly numbered paragraph[s]" with
citations to admissible evidence, paragraphs in the moving
party's Local Rule 56.1 statement are "deemed to be admitted for
purposes of the motion."  Local Civil Rule 56.1(c).  The
plaintiff's Local Rule 56.1 counterstatement fails to comply
with these requirements: while the plaintiff submitted a Local
Rule 56.1 counterstatement, many of its paragraphs consist of
bare denials of assertions made in the defendants' Local Rule
56.1 statement, and others cite only to irrelevant or
inadmissible evidence.

The plaintiff has, through his failure to comply with the
dictates of Local Rule 56.1, admitted the defendants' statements
of material fact for the purposes of their motion for summary
judgment.  Because summary judgment may be granted when there
are no disputes of material fact, the plaintiff's failure alone
is sufficient to grant the motion for summary judgment.  But
even if it were the case that the plaintiff had met his
obligations under Local Rule 56.1, the defendants would
nonetheless be entitled to summary judgment.

B.   Federal Discrimination Claim

In opposition to the motion for summary judgment, James
only addresses a few of the claims on which the defendants have
sought summary judgment.  James has therefore abandoned those

claims not addressed in his opposition to this motion.  The
abandoned claims include his claims stemming from his assignment
to clean elevator tracks[5] and his § 1983 race discrimination
claim.

James not only fails to discuss his § 1983 race
discrimination claim, he has also failed to offer evidence to
support it.  To prevail on a claim of race discrimination in
violation of § 1983, a plaintiff must demonstrate that "(1) she
was within the protected class; (2) she was qualified for the
position; (3) she was subject to an adverse employment action;
and (4) the adverse action occurred under circumstances giving
rise to an inference of discrimination." Walsh v. New York City
Hous. Auth., 828 F.3d 70, 75 (2d Cir. 2016) (citation omitted).[6]

---

[5] James no longer asserts that the assignment to clean elevator
tracks was discriminatory.  He acknowledges that the dispute
over whether maintenance workers could be assigned to clean
elevator tracks was a union grievance brought on behalf of
several maintenance workers and that the dispute was being
handled through the prescribed process for resolving disputes
between John Jay maintenance workers, their union, and John Jay.
Moreover, James alone did not bring the grievance over the
elevator door track assignments: three other John Jay
maintenance workers also objected to this assignment as outside
of the scope of their duties, and some of these workers were
white or Latino.

[6] This framework is also used to address employment
discrimination claims against private actors under Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  But
"the elements of the substantive cause of action are the same
under both" Title VII and § 1983.  Feingold v. New York, 366
F.3d 138, 159 (2d Cir. 2004) (citation omitted).

He has not offered evidence that any of the work assignments of which he complains constitutes a materially adverse employment action or identified evidence supporting an inference of discrimination in connection with his work assignments.

For instance, although James points to ten work orders in which he was required to change light bulbs, none of those work orders indicates that he should use a ladder or dictates any particular equipment or method for accomplishing the assignment. James has offered no evidence that he or any other maintenance worker was ever denied a request to erect scaffolding, and neither Stewart nor Jeffrey is aware of any such instance. Finally, contrary to James' assertion, there are work orders in which other maintenance workers who James classifies as white were required to change light bulbs in stairwells where the ceiling height was 14' or higher.

C.   Federal Hostile Work Environment Claim

There are two claims from his initial complaint that James addresses in his opposition to this motion.  James first opposes dismissal of his hostile work environment claim.  He contends that this claim survives to the extent that it is premised on his allegations that he was required to work on tall ladders and given work orders for work that was not needed.  "To prove a hostile work environment claim . . . a plaintiff must establish

that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Legg v. Ulster Cty., 979 F.3d 101, 114 (2d Cir. 2020) (citation omitted).  A single incident of hostile conduct may in some circumstances give rise to a hostile work environment claim, "but to do so it must be extraordinarily severe."  Agosto v. New York City Dep't of Educ., 982 F.3d 86, 102 (2d Cir. 2020) (citation omitted).  "Furthermore, the plaintiff must demonstrate that the [hostile] conduct occurred because of his protected status."  Id. (citation omitted).

James has failed to offer evidence to show that any of his assignments constituted a sufficiently severe event or was part of a pervasive pattern sufficient to create a hostile work environment.  He has also failed to offer evidence from which a jury could determine that these assignments were given to him because of his race.  And in any event, "[c]omplaints about work assignments" generally do not give rise to a successful hostile work environment claim.  See Farsetta v. Department of Veterans Affairs, No. 16cv6124(DLC), 2017 WL 3669561, at *7 (S.D.N.Y. Aug. 24, 2017) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015)).

11

D.   Federal Retaliation Claim

James contends as well that his retaliation claim survives. He appears to contend that he was retaliated against for filing this action in January 2019, filing James I in 2018, filing a complaint with the Equal Employment Opportunity Commission in 2017, and objecting to a work schedule change that occurred in 2017.  He identifies the retaliatory treatment as the requirement that he work alone on tall ladders in December 2019 and the work orders he was given between August and November 2019 that instructed him to make repairs when there was no work to be done.  To prove retaliation, a plaintiff must show "(1) he was engaged in protected activity, (2) the employer was aware of that activity, (3) the employee suffered a materially adverse action, and (4) there was a causal connection between the protected activity and that adverse action."  Agosto, 982 F.3d at 104 (citation omitted).

The defendants are entitled to summary judgment because James has not shown a causal connection between a protected activity and an adverse employment action.  A plaintiff may establish the causation element either through "direct evidence of causation" or indirectly "by showing that the protected activity was closely followed in time by the adverse employment action."  Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 845 (2d

12

Cir. 2013) (citation omitted).  Neither of the 2019 events
occurred sufficiently close in time to the filing of this
litigation in January 2019 to support an inference of
retaliation.  "[T]emporal proximity must be very close," and the
Second Circuit has suggested that a period of five months is at
the outer edge of what is acceptable to establish an inference
of causation.  Abrams v. Department of Public Safety, 764 F.3d
244, 254 (2d Cir. 2014) (citation omitted).  Here, the time gap
is eight months.  And James has not otherwise offered any direct
evidence that Jeffrey acted with retaliatory animus.

James has also failed to offer evidence that any of these
actions constituted a material adverse action for purposes of a
retaliation claim.  To establish the adverse action element of a
retaliation claim, a plaintiff must offer proof that "the
alleged adverse action to which the plaintiff was subjected
could well have dissuaded a reasonable employee in his position
from complaining of unlawful discrimination."  Davis-Garett v.
Urb. Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019) (citation
omitted).  As already described, James has failed to offer
evidence that he was required to use a tall ladder.  The work
orders to which he points do not direct use of specific
equipment.  And because the defendants did not require him to
use a tall ladder, they necessarily could not have required him

13

to use a tall ladder to dissuade him from complaining of
unlawful discrimination.

In support of his claim that he was issued work orders
between August and November 2019 to perform work when none was
required to be done, James relies in part on testimony from his
immediate supervisor Stanley.  Stanley testified that, in his
view, an Administrative Superintendent should inspect the work
area to determine what sort of work order is necessary before
issuing a work order.  Beyond Stanley's personal views regarding
how maintenance work should be conducted at John Jay, however,
James has failed to offer evidence that either defendant was in
fact responsible for inspecting work areas before they assigned
the tasks to be done.  It is undisputed that faculty and other
employees send requests for maintenance work to the
Administrative Superintendent.  The defendants have shown that
it was the role of a maintenance worker, as opposed to the role
of the Administrative Superintendent, to evaluate an assigned
task and determine how to accomplish any work that needed to be
done.

But even if Stanley is correct that the Administrative
Superintendent failed to fulfill her duties to inspect work
areas before assigning duties to maintenance workers, James has
not offered any evidence that he was treated differently from

14

any other worker -- including workers who were not members of
his protected class and who did not engage in any protected
activity -- in this regard.  Put another way, to survive summary
judgment on this theory, James would have to provide evidence
that the Administrative Superintendent was shirking her duty to
inspect potential work sites before assigning tasks to
maintenance workers with respect to James alone, as opposed to
shirking her duty with respect to all of the maintenance
workers.  James has not provided that evidence.  And because he
has not shown that he was treated differently than any other
worker with respect to assessment of potential tasks, he has not
shown that the defendants treated him differently than other
workers in an effort to retaliate against him for protected
activity.

    E.   State Law Claims

    James also brings hostile work environment and retaliation
claims under the NYSHRL and the NYCHRL.  "The standards for
evaluating hostile work environment and retaliation claims are
identical under [federal law] and the NYSHRL."  Kelly v. Howard
I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14
(2d Cir. 2013).  Because the defendants are entitled to summary
judgment on James' federal hostile work environment and

retaliation claims, they are also entitled to summary judgment
on his parallel NYSHRL claims.

Claims under the NYCHRL, by contrast, must be analyzed
"separately and independently from any federal and state law
claims" because the NYCHRL is to be construed "broadly in favor
of discrimination plaintiffs, to the extent that such a
construction is reasonably possible." Mihalik v. Credit
Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir.
2013) (citation omitted).  But even under this broader standard,
the defendants are entitled to summary judgment on James' NYCHRL
hostile work environment and retaliation claims.

"[T]o prevail on a retaliation claim under the NYCHRL, the
plaintiff must show that she took an action opposing her
employer's discrimination, and that, as a result, the employer
engaged in conduct that was reasonably likely to deter a person
from engaging in such action." Id. at 112 (citation omitted).
For the reasons set forth above in the discussion of James'
federal retaliation claims, he has not shown that the defendants
engaged in conduct that was reasonably likely to deter him from
taking action that opposed discrimination.  And to prevail on a
hostile work environment claim, James "need only show
differential treatment -- that [he] is treated 'less well' --
because of a discriminatory intent." Id. at 110.  As discussed

16

in the context of his federal discrimination and hostile work environment claims, James has not shown that he was treated differently from any other workers.

## II. Motion to Amend

In opposing the motion for summary judgment, James only briefly discusses the claims brought in his complaint. Instead, his memorandum in opposition to this motion principally relies upon a request to amend his pleading to assert a new claim of race discrimination. In his memorandum, he requests for the first time in this action that he be allowed to amend his complaint to assert that his assignment to his territory was discriminatory. He claims that a white maintenance worker was assigned to a territory composed of only three (not five) floors with fewer classrooms and "other work-generating areas."

James has already twice amended his complaint, so any further amendment requires leave of Court.[7]  Fed. R. Civ. P.

---

[7] James styles his motion to amend as an amendment to conform his pleading to the proofs made pursuant to Rule 15(b), Fed. R. Civ. P.  Although Rule 15(b) refers only to amendments occurring during or after trial, the Second Circuit has permitted the application of Rule 15(b) at summary judgment, even though such an application is seemingly inconsistent with the text of Rule 15(b).  See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000); Clomon v. Jackson, 988 F.2d 1314, 1323 (2d Cir. 1993); see also Myers v. Moore, 326 F.R.D. 50, 60-61 (S.D.N.Y. 2018) (highlighting the inconsistency between the text of Rule 15(b) and the use of Rule 15(b) to allow for amendment at the summary judgment stage).  The Court construes James' motion for leave to amend as one under Rule 15(a) because, in any event,

15(a)(2).  Although a court "should freely give leave [to amend]
when justice so requires," id., leave to amend may be denied
"upon a showing of undue delay, bad faith, dilatory motive, or
futility."  Sacerdote v. New York University, 9 F.4th 95, 115
(2d Cir. 2021) (citation omitted).

James' request to amend is denied for several independent
reasons.  First, his proposed new claims are barred by the
doctrine of res judicata, so any amendment would be futile.  By
his own admission, James was assigned his territory at least as
early as 2016.  Therefore, he was required to bring any claim
that his territory assignment was discriminatory in the action
he filed in 2018.  James, 2020 WL 1911211, at *3-5.  And even if
this claim were not barred by res judicata, it would be futile
because James does not assert that either defendant had any
responsibility for giving James this particular assignment.
Further, this request to amend is untimely.  Allowing James to
amend his complaint following the close of discovery in this,
his second lawsuit, would be highly prejudicial.  Finally, James
has not shown that any new claim would be meritorious.  While he
claims that comparable white workers were assigned to cover John

---

the standards for evaluating Rule 15(a) and Rule 15(b) motions
overlap, and the result of the analysis would be the same
regardless of whether James' motion is construed as one under
Rule 15(a) or Rule 15(b).  Hillburn by Hillburn v. Maher, 795
F.2d 252, 264 (2d Cir. 1986).

Jay buildings with fewer than five floors while he was assigned to cover five floors, James was assigned to maintain the New Building, while these purportedly comparable white workers were assigned to do maintenance work in older buildings that necessitated more tasks.

**Conclusion**

The defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for the defendants and close this case.

```
Dated:    New York, New York
          November 16, 2021
```

_____
DENISE COTE
United States District Judge
